Filed 12/13/13  P. v. Williams CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B250001 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. YA087016) |
| BRAD ALLAN WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Steven Van Sicklen, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

After the trial court denied his motion to suppress, Brad Williams pled no contest to possession of a controlled substance for sale (count 1; Health & Saf. Code, § 11378) and forgery involving counterfeit U.S. currency (count 2; Pen. Code, § 476). The court sentenced Williams to an aggregate sentence of five years in state prison as follows: the mid-term of two years on count 1, plus a three-year term on a drug-related prior, plus a concurrent term of two years on count 2. The court suspended execution of sentence and placed Williams on formal probation for a period of three years on the condition, among others, that he complete a residential drug treatment program. The court imposed a $280 restitution fine and like amount probation revocation fine (stayed pending any violation proceeding), plus $80 in court security fees, $60 in conviction assessments, a $10 crime prevention fee, a $50 lab fee, and $155 in penalty assessments. We affirm.

## FACTS[1]

On March 26, 2013, at approximately 1:00 a.m., Officer James Walker and his partner, Officer Maier, were driving in the area of 182nd Street and Kingsdale Avenue in Torrance, when they pulled behind a truck and noticed that it had a trailer hitch ball "that stuck up and covered one of the numbers of the license plate, almost completely, making it impossible to read from directly behind the vehicle." The officers initiated a traffic stop relating to section 5201 of the Vehicle Code.[2]

---

[1]     Our summary of the facts is compiled from the preliminary hearing testimony.

[2]     Vehicle Code section requires a license plate to be "mounted in a position to be clearly visible." In *People v. White* (2001) 93 Cal.App.4th 1022, the Court of Appeal interpreted the "clearly visible" language of Vehicle Code section 5201 to mean that a violation occurs when a trailer hitch ball "partially obscures" a license plate. (*Id.* at p. 1026.) Further, a police officer may, consistent with the Fourth Amendment, briefly initiate a traffic stop of a vehicle if the objective facts show such a traffic law violation. (*Id.* at pp. 1025, 1026.)

2

Officer Walker approached the driver, Williams, and asked him for identification and to exit the vehicle.[3] After Williams got out of his vehicle, Officer Walker noticed that Williams's eyes were "extremely red." Officer Walker thought Walker "looked like he may have been either under the influence of some kind of narcotics or alcohol," and asked if he had used any narcotics recently. Williams said that he had taken some Xanax pills and had ingested methamphetamine the prior evening. When Officer Walker asked Williams if there were any narcotics in his vehicle, Williams answered no. When Officer Walker asked Williams if it was okay for the officers to search his vehicle, Williams said it was.

Officer Maier searched Williams's vehicle and found a baggie with a suspected controlled substance. At the preliminary hearing, it was stipulated that the baggie recovered from Williams's vehicle contained approximately 9.42 grams of methamphetamine. Officer Maier placed Williams under arrest. The officers recovered "numerous" $20 bills from Williams's wallet and his cell phone from his vehicle. After the officers recovered his cell phone, Williams asked Officer Walker to obtain a phone number from the phone. The phone was "locked" by a "drawing pass code." Walker provided the "pass drawing" to Officer Walker who then unlocked the phone. The very first thing that Officer Walker saw when he unlocked the phone's screen was a text message from a "Mr. Sweet" that appeared to be referencing the sale of narcotics.

On March 26, 2013, at approximately 11:00 a.m., Detective Walter Harris oversaw the serving of a search warrant on Bataan Road in Redondo Beach.[4] During the search, police recovered baggies of methamphetamine from a safe in the garage, along with

---

[3]    Officer Walker testified at the preliminary hearing that he knew Williams from past encounters, but had not known that Williams was the driver of the truck until after he (Officer Walker) walked up to the stopped vehicle.

[4]    According to the probation officer's report, the search warrant was for Williams's residence. At the preliminary hearing, Detective Harris testified that co-defendant Robert Sweet stated during an interview that he rented the house. Neither the search warrant nor the underlying affidavit are in the record on appeal; they do not appear to have been introduced at the preliminary hearing.

genuine and counterfeit U.S. currency. Also in the garage were several computers, both desktop and laptop, a pyrex cooking dish with a solvent residue, pieces of paper with printing on either the front or back of a $100 bill, a scale, and ledgers or accounting books. Two men, co-defendants Robert Sweet and Gregory Faison, were inside the garage at the time the officers arrived to search the property, and were arrested at the scene. Police recovered a counterfeit $100 bill from co-defendant Sweet's pants pocket. After co-defendants Sweet and Faison were transported to the police station, officers found a baggie of methamphetamine in the car in which Faison had been transported. During interviews, Williams, Sweet and Faison made statements implicating themselves in making and selling narcotics, and in counterfeiting.

In April 2013, Williams filed a motion to suppress all evidence found "as a result of a warrantless search of [his] vehicle and cell phone." The trial court heard Williams's motion at a preliminary hearing as to charges against all three defendants in June 2013. In the course of the hearing, the People presented evidence establishing the facts summarized above. Williams's counsel argued that the initial traffic stop was, in fact, a "pretext stop" for the purpose of conducting a search, that Officer Walker's testimony about the license plate obstruction from a trailer hitch ball was not credible, and that the license plate could be read by moving slightly to the side as opposed to looking at the license plate directly from behind the vehicle. Further, defense counsel argued that the act of opening and reading Williams's cell phone was an unreasonable and unconstitutional search. The trial court expressed reservations about the initial stop, but, in the end, accepted Officer Walker's testimony that he had not known Williams was driving, and had initiated the stop for an actual, objectively-based traffic violation. The court found the evidence was sufficient to hold Williams for trial.

In June 2013, the People filed an information charging Williams with possession of a controlled substance for sale (count 1; Health & Saf. Code, § 11378) and forgery involving counterfeit U.S. currency (count 2; Pen. Code, § 476). Further, the information charged co-defendant Sweet with forgery involving counterfeit U.S. currency (count 2; Pen. Code, § 476), possession of a controlled substance for sale (count 3; Health & Saf.

4

Code, § 11378), and possession of a controlled substance -- cocaine (count 4; Health & Saf. Code, § 11350, subd. (a)). Also, the information charged co-defendant Faison with forgery involving counterfeit U.S. currency (count 2; Pen. Code, § 476) and possession of a controlled substance – methamphetamine (count 6; Health & Saf. Code, § 11377, subd. (a)).[5] The information alleged that Williams had a prior drug-related conviction and had served a prison term. (Health & Saf. Code, § 11370.2, subd. (a); Pen. Code, § 667.5, subd. (b).)

At a hearing on July 8, 2013, Williams waived his constitutional trial rights, and pled no contest to counts 1 and 2 and admitted the prior drug conviction. The trial court sentenced Williams as noted at the outset of his opinion.

## DISCUSSION

We appointed counsel to represent Williams on appeal. Appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, requesting that our court review the record on appeal for arguable issues. We thereafter notified Williams by letter that he could submit any claim, argument or issues which he wished us to review. Williams has not filed a letter brief. We have independently reviewed the record on appeal, and we are satisfied that Williams's appointed counsel fulfilled his duty, and that no arguable issues exist. (*People v. Wende, supra,* 25 Cal.3d 436, *People v. Kelly* (2006) 40 Cal.4th 106.)

---

[5]  It is not altogether clear to this court whether the prosecution's theory of the charges against Williams at trial would have been based on what was recovered from his vehicle or on what was found at the Bataan Road property, or part of one and part of the other. At the preliminary hearing, the discussions between the lawyers and the magistrate focused on the drugs and money found during the traffic stop of Williams's vehicle. To the extent the charges against Williams were based on items recovered from the Bataan Road property, his motion to suppress did not challenge the search warrant, unless, by inference, he was arguing the warrant was the fruit of the proverbial poisonous tree.

**DISPOSITION**

The judgment is affirmed.

BIGELOW, P. J.

We concur:

RUBIN, J.

FLIER, J.